BEAUNIT MILLS, INC., APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR & INDUSTRY, STATE OF NEW JERSEY, *ET ALS.*, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 12, 1955—Decided January 6, 1956.

548

Before Judges CLAPP, JAYNE and FRANCIS.

Mr. *George Heftler* argued the cause for Beaunit Mills, Inc., appellant on all appeals (*Messrs. Platoff, Platoff & Heftler*, attorneys; *Mr. S. David Harrison*, on the brief).

*Mr. Clarence F. McGovern* argued the cause for respondents Board of Review, Division of Employment Security, Department of Labor & Industry, State of New Jersey, *et als.*

The opinion of the court was delivered by

FRANCIS, J. A. D. The ten employees, who are respondents here, were granted unemployment compensation by the Division of Employment Security. On this appeal the sole contention is that the award was improper because of *N. J. S. A.* 43:21-5(*b*) which provides:

"An individual shall be disqualified for benefits:
\* \* \* \* \* \* \* \*
(b) For the week in which he has been discharged for *misconduct connected with his work*, and for the five weeks which immediately follow such week (in addition to the waiting period), as determined in each case."

The Division's records show that six of the ten workers, Snyder, Heck, D'Ascendis, Jobes, Morgan and Leffler, actually received no payments either because they did not report to their employment office as the regulations require, or because they were working during the period covered by the award. Of the remaining four, Smith and Plunkett received $30 each; Van Sciver and Comegys were paid $300 and $405 respectively.

The record presented to us, particularly with relation to the employer's present contention, is in a rather confused state. Brief reference to the factual situation out of which the claims arose reveals this:

The employees involved in this proceeding were members of the Truck Drivers and Helpers, Local 676, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L. By virtue of a written collective bargaining agreement, the union was their representative. The contract, although mentioned in passing in the decision of the Division, was never introduced at any of the hearings by the employer (who was not represented by counsel at them) or by the union representative or the

attorney for the claimants. Whether it was ever inspected by an investigator of the agency does not appear.

On January 22, 1955 one Posch, a truck driver, was discharged because of an alleged reckless driving record. Some of his fellow workers were dissatisfied about it. Five days later, on January 27, the employees reported for work at the usual time in the morning, then refused to begin their duties. After a short time the dispatcher at the terminal, on instructions from his superior, told them that if they did not return to work within an hour they would be discharged. Seventeen of them, including these claimants, declined to return. At the end of the hour, their time cards were removed from the rack and they were discharged.

The union agent Dodge was notified by the employer and he appeared on the scene about a half-hour after the discharge. He inquired as to the reason for the termination of Posch's employment and then instructed the men to go back to work but they refused. This agent characterized the work stoppage as "wildcat" and unauthorized as far as the union was concerned.

Later in the day Dodge again communicated with a member of the committee for the men and told him to get the men back to work the next day. Around 4:30 or 5:00 p. m. on January 27, several of the men reported at the loading platform and asked for reinstatement; others endeavored to return on January 28 and 29. All were refused.

Following the walkout on January 27 the employer's delivery service was at a standstill until around 5:00 p. m., when common carriers were engaged to transport its merchandise. By the middle of the following week 75% of the discharged men had been replaced.

When the claims for unemployment compensation were filed the answer of the employer charged a voluntary quit as a basis for disqualification under *N. J. S. A.* 43:21–5(*a*). During the course of the various hearings, section 5(*d*) was added as a ground for denial of benefits. This section provides for disqualification where the unemployment is due to

a stoppage of work caused by a labor dispute. Both of these grounds are now abandoned.

The course of the proceedings is anything but clear. The claims of Heck, Smith and Van Sciver seem to have been dealt with first. According to Miss Marie J. Doran, who heard the employer's appeal hereafter referred to, they were dismissed at the agency level because of disqualification under section 5(b), that is, on account of a discharge for misconduct connected with their work.

Heck sought a review in the Appeals Tribunal. His appeal came on before an Appeals Examiner who affirmed the denial of benefits under section 5(b). The memorandum makes no reference to the labor contract or to any of its provisions. No further appeal was pursued.

Apparently after investigation, the Division of Employment Security rendered a decision that some of the men were entitled to benefits. This action seems to have been subsequent to the consideration of the Heck, Smith and Van Sciver cases. Yet it looks as though the applications of these three men were included among the ones which were then acted on favorably. How this came about, if it did, is not explained.

In any event, the employer appealed to the Appeals Tribunal reasserting the voluntary quit defense. This appeal was heard by Miss Doran, Senior Appeals Examiner. There the grounds for reversal urged were voluntary quit and unemployment due to work stoppage resulting from a labor dispute. The grant of benefits was affirmed for the reasons that the men were discharged; they did not quit; nor were they unemployed because of a labor dispute when they applied for compensation. It was pointed out that the work stoppage due to the labor dispute had lasted for one day at most when their discharge occurred.

At this hearing there was some passing discussion about the result in the Heck, Smith and Van Sciver cases, but strangely enough the employer, not represented by counsel, did not urge specifically a misconduct discharge as a bar to recovery. Nor did Miss Doran pass upon it. However, in

her memorandum affirming the grant of compensation, she wrote:

"This tribunal is limiting its jurisdiction to the two issues raised by the employer's appeal, *i. e.*—disqualification under 5(*d*) and 5(*a*). Other considerations are remanded to the Agency."

Then, after holding these two sections inapplicable, the memorandum continued:

"The matter of eligibility or disqualification under other sections of the law is remanded to the agency."

Appeal was pursued to the Board of Review which affirmed the Appeals Tribunal. From there the case comes to us.

As already indicated, the ground upon which reversal is sought here is that the employees were discharged because of misconduct connected with their work and therefore are ineligible under section 5(*b*). More particularly, the employer says that the collective bargaining contract establishes grievance and arbitration procedures for the handling of grievances. The agreement, it is said, permits an employee to file a grievance ten days after his discharge and the matter will then be handled in the stipulated fashion; if no such filing takes place, the grievance is to be deemed settled.

Thus the argument is made that if the truck driver, Posch, was aggrieved by his discharge, the remedy was resort to the grievance machinery and not for his fellow employees to engage in a work stoppage that was in violation of their contractual undertaking. The employer urges that the breach of the agreement, the union-disapproved strike and the refusal to return to work when ordered to do so by proper authority, constitutes misconduct connected with the work and upon discharge therefor precludes recovery of compensation under section 5(*b*).

One difficulty with this contention is that the bargaining agreement is not in the record made before the Board of Review or (so far as can be determined) before the agency or appellate tribunal. The pertinent provisions thereof have

been added to the appendix in this court and the suggestion made that we should receive it in the exercise of our original jurisdiction. *New Jersey Constitution, Art. 6, sec. 5, par. 3* (1947); *R. R.* 1:5–4; *R. R.* 2:5; *Ballurio v. Castellini,* 29 *N. J. Super.* 383 (*App. Div.* 1954).

The Board demurs, saying that disqualification by reason of section 5(*b*) was not advanced in the proceeding before the Agency, Appeal Tribunal or Board of Review, and therefore it should not be considered now, nor should additional evidence be received to sustain it. To this the reply is made that the hearings are not adversary in nature and that the Board "in the interest of administrative efficiency ordinarily should, consider and determine each claim in all its aspects existing at the time of the hearing." *Ludwigsen v. N. J. Dept. of Labor & Industry,* 12 *N. J.* 64, 70 (1953). In this connection also, reference is made to *Krauss v. A. & M. Karagheusian, Inc.,* 13 *N. J.* 447, 457 (1953), where Justice Brennan said for the Supreme Court:

"Plainly the statute casts upon the agency, as respects both original and appellate determinations, the role actively to press the interested parties to produce all relevant proofs at their command and, when necessary, independently to take steps to get the facts, as, for example, when the record made by the parties is unsatisfactory or there is fair reason to doubt the reliability of the proofs as a basis for decision or the agency in any case has reason to believe that additional facts obtained and made part of the record on its own initiative will contribute to a correct result."

We do not undertake to decide whether the agency or the appellate bodies should have obtained a copy of the labor contract during the course of the investigation or the hearings. Certainly in the Appeals Tribunal the fact of existence of such a document appeared, as well as information that the claims of at least one of the very employees involved had been denied under section 5(*b*). But in fairness it must be said that the decision was confined to the sections raised, and the problem of eligibility or disqualification under other provisions of the act was remanded to the agency. We are in doubt as to whether this was done so that the effect of 5(*b*)

could be considered there, thus avoiding possible conflict with the decision in the Heck case. But the employer appealed to the Board of Review and so the remand never came about.

 Nor do we find it necessary to express an opinion as to whether the alleged disqualification under section 5(*b*) should be considered waived because not specifically advanced prior to this appeal. Undoubtedly the strict rule of waiver of issues or defenses not presented which prevails in the courts should not be applied ordinarily to such actions; particularly in view of the investigative duty of the agency and the understandable informality which exists at the various stages of administration of the act. The nature of the agency's investigative and *quasi*-judicial duty is such that, where a particular issue is clearly in the case, failure of an employee or an employer, unrepresented by counsel, to urge it, ought to receive sympathetic consideration in the courts rather than a strict application of the doctrine of waiver. The presence of counsel at least at the appellate levels would undoubtedly serve substantially to lessen such problems.

 In view of all the circumstances we do not believe that our original jurisdiction should be exercised in order to receive in evidence the portion of the bargaining contract offered to us by the employer and then to use it in conjunction with the record made below as a possible basis for reversing the action of the Board. This belief is influenced in large measure by the fact that neither the proffered evidence nor the ground for disqualification, which it is said to support, was before the particular Appeal Tribunal whose decision was reviewed by the Board of Review and is now before us.

The Division of Employment Security is charged with the administration of the unemployment compensation legislation. In the day-to-day application of the act to the myriad factual settings which arise, valuable experience and expertness are acquired. Consequently it is important for the courts to have the viewpoint of the Division on a particular problem—especially a more or less novel one (see *Board of*

*Review v. Bogue Electric Co.*, 37 *N. J. Super.* 535 (*App. Div.* 1955), petition for certification filed Nov. 9, 1955)— before engaging in their own process of adjudication.

We do not know from the record before us whether the factual situation is the same as to each employee. It appears that the walkout began about 5:00 A. M. when certain workers reported. However, others did not arrive at the employer's premises until 7:00 A. M., when they were scheduled to begin work. Van Sciver, one of the late comers, testified as follows:

"Q. Why is it when you were there at the plant at 7 o'clock you didn't work? You said you didn't work?

A. I came to work. There was about fifteen or twenty guys that were not working. They asked you to find out why Posch is fired and get some action from the company why he was fired and that was the reason why we didn't go to work that day, we didn't know why he was fired.

Q. You were protesting his discharge?

A. No, I was not protesting his discharge. I am wondering why if they could do that to anybody they could do it to me.

Q. You were supposed to report for work at 7 o'clock and they fired you at 8:30, is that right?

A. Yes.

Q. What were you doing in between 7 o'clock and 8:30 in the morning?

A. Trying to find out why the company—a reason why the company fired Posch.

Q. Didn't the company inform you to do your job?

A. They didn't tell me to do any work, no."

These statements tend to show that Van Sciver was not present when the employer's ultimatum was given to return to work within an hour or suffer discharge. The effect of that absence on the issue of work connected misconduct is a matter for evaluation by the agency, with all the other facts in the various cases.

Accordingly, the record is remanded to the Board of Review so that the bargaining contract as well as any other pertinent evidence may be received and the issue of disqualification under section 5(b) fully determined.